UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| NATIONAL UNION FIRE INSURANCE | § | |
| COMPANY OF PITTSBURGH, PA, | § | |
| | § | |
|      Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. H-10-2379 |
| | § | |
| CONTINENTAL CARBON COMPANY, | § | |
| | § | |
|      Defendant. | § | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

## I.    Introduction

Pending before the Court is the plaintiff's, National Union Fire Insurance Company of Pittsburg, PA, motion for partial summary judgment (Docket Entry No. 51). The defendant, Continental Carbon Company, filed a response (Docket Entry No. 55), to which the plaintiff replied (Docket Entry No. 60). Also pending is the defendant's motion for partial summary judgment (Docket Entry No. 52), to which the plaintiff responded (Docket Entry No. 53), and to which the defendant replied (Docket Entry No. 61).  Finally, the plaintiff filed a motion to strike (Docket Entry No. 54, supplemented with Docket Entry No. 59).  The defendant responded to the plaintiff's first motion to strike (Docket Entry No. 62), and to the plaintiff's supplemental motion (Docket Entry No. 64).  After having carefully reviewed the motions, the responses, the record and the applicable law, the Court grants the plaintiff's motion for partial summary judgment, denies the defendant's motion for partial summary judgment and grants the plaintiff's motions to strike.

## II.   Factual Background

This case concerns an insurance coverage dispute that has endured for over six years. The defendant manufactures, markets and sells furnace grade carbon black in a pelletized form for use in tires and other rubber and plastic goods.  The plaintiff issued the defendant four primary insurance policies between 1995 and 1999, and five umbrella policies between 1995 and 2002.[1]

In 2001, Action Marine boat dealership, several individuals, and the City of Columbus, Georgia (collectively, "the Action Marine plaintiffs") sued the defendant in federal court in the Middle District of Alabama, alleging exposure to dust and particulate pollution discharged by the defendant during its carbon black production process at its Alabama plant, and seeking recompense for alleged property damage and other losses.[2]

After the Action Marine plaintiffs filed suit, the defendant demanded a defense from American International Specialty Lines Insurance Company ("AISLIC"), which had issued the defendant a one million dollar primary policy that covered pollution liability.  On November 7, 2002, as the AISLIC primary policy limits neared exhaustion from defense costs, the defendant sought additional coverage from the current plaintiff, referencing only the 2001 umbrella policy. On September 29, 2003, the plaintiff declined the defendant's coverage request, citing the Named Peril and Time Element Pollution Endorsement ("Endorsement 12") exclusion to the 2001 umbrella policy and the inapplicability of any exception, including the Products-Completed Operations Hazard ("PCOH") exception to Endorsement 12.

---

[1] The umbrella policies' coverage periods were 1995-96, 1996-97, 1997-2000, 2000-01, and 2001-02.

[2] They asserted claims for negligence; wanton conduct; breach of the duty to warn; fraud, misrepresentation and deceit; nuisance; trespass; common law strict liability; and permanent injunction.

More specifically, the plaintiff asserted that the PCOH exception did not apply to: (1) carbon black dust particulates that escaped from the defendant's plant during the defendant's production process; or (2) losses associated with fugitive emissions that arose out of product still in the defendant's physical possession. The Action Marine plaintiffs eventually recovered a judgment in excess of $20 million, including $17.5 million in punitive damages, which judgment was affirmed on appeal.[3]  After the Action Marine verdict, five more Fugitive Emission Lawsuits were filed against the defendant, all involving substantially similar allegations.[4]

In 2004, the defendant's counsel wrote four letters to the plaintiff, referencing the 2001 umbrella policy and the PCOH exception.  On August 27, 2004, the plaintiff reaffirmed its denial of coverage, claiming that the carbon black dust and particulates discharged from the plant did not qualify as the defendant's "product," and that those pollutants were still in the defendant's "physical possession," as used in the PCOH exception.  On November 24, 2004, the defendant demanded arbitration of the PCOH exception's meaning.

On September 28, 2007, before the arbitration concluded, the defendant filed a declaratory judgment action in federal court in the Middle District of Alabama, claiming that the plaintiff breached its duties to defend and indemnify the defendant in the Action Marine lawsuit. The defendant sought relief only under the PCOH exception. The parties agreed to abate the Alabama lawsuit pending the arbitration.

From April 13-15, 2010, three insurance experts formed an arbitration panel to interpret the PCOH exception to the 2001 umbrella policy.  On June 3, 2010, a majority of the panel

---

[3] *Action Marine, Inc. v. Cont'l Carbon Inc.*, 481 F.3d 1302 (11th Cir. 2007), cert. den'd 128 S. Ct. 2994 (2008).

[4] *The Ponca Indian Tribe of Oklahoma, et al. v. Continental Carbon Comp., et al.*, No. 05-cv-445c (W.D. Okla.); *City of Ponca, et al. v. Continental Carbon Comp., Inc. et al.*, No. C.J.-2005-16-PC (Dist. Ct. Kay County, Okla.); *Owen et al. v. Continental Carbon Comp.*, No. 09-cv-399-C (W.D. Okla.); *Adams, et al. v. Continental Carbon Comp., et al.*, Nos. CJ-2007-52-PC, CJ-2007-87-PC, and CJ-2007-104-PC, consolidated in Dist. Ct. of Kay County, Okla.; and *Riley, et al. v. Continental Carbon Comp., Inc., et al.*, 2004-cv-182 (Cir. Ct. Russell County, Ala.).

issued an award confirming the plaintiff's interpretation of the PCOH exception, determining that: (1) a "product" is "the thing that a manufacturer produces for sale [but not items] that are in the process being manufactured and are not yet ready for sale;" and (2) the contested fugitive emissions fell within the "physical possession" limitation to the PCOH exception.

On July 2, 2010, the defendant filed suit against the plaintiff in Oklahoma federal district court, seeking coverage and a vacatur of the arbitration award.  For the first time, the defendant cited the windstorm exception to Endorsement 12 as a basis for indemnity. After the Oklahoma court dismissed the defendant's suit, a Texas state district court rendered a final judgment affirming the arbitration award on January 31, 2011.

The case currently before this Court was stayed for approximately two months, pending a determination of whether the defendant's Oklahoma case would proceed (filed two days earlier), or the present case in which the plaintiff seeks a declaration that it owes the defendant neither a defense nor indemnity in connection with the six Fugitive Emission Lawsuits arising out of the release of pollutants from the defendant's manufacturing plants in Alabama and Oklahoma. This Court lifted the stay after the Oklahoma court determined that this action should proceed. Although the present dispute originally turned only on the PCOH exception to the 2001 umbrella policy, it has expanded to include the six underlying actions[5] concerning the five umbrella policies and the four primary policies.  The Court has jurisdiction pursuant to 28 U.S.C. § 1332.

---

[5] The underlying suits have all been resolved, one by trial and five by settlement.

### III.    Contentions of the Parties

#### A.    The Plaintiff's Contentions

The plaintiff seeks a declaratory judgment that it owes the defendant no duty to defend or indemnify it under the five umbrella policies.[6]  It claims that its duty to defend is foreclosed by specific policy provisions,[7] and by the Texas eight-corners rule.  It contends that it owes the defendant no duty to indemnify because the arbitration award has preclusive effect and collaterally estops the defendant from seeking indemnity.  Alternatively, the plaintiff maintains that the defendant offers no evidence that the losses in the underlying lawsuits arose from products not in the defendant's physical possession, and that the defendant's windstorm argument fails.

Regarding the defendant's motion for partial summary judgment, the plaintiff claims that the defendant cannot show that it is entitled to a defense under any of the primary policies.  The plaintiff also claims that the defendant failed cite to the record with particularity, thereby violating Federal Rule of Civil Procedure 56(c)(1)(A).  The plaintiff asserts that material issues of fact remain disputed concerning whether the defendant timely complied with the written notice provisions of the contested policies.  Regarding the plaintiff's motions to strike, it claims that the defendant impermissibly seeks admission of extrinsic evidence, some of which was allegedly filed untimely.

---

[6] The plaintiff has not moved for summary judgment regarding the four contested primary policies.

[7] As will be discussed below, three of the umbrella policies contain the Endorsement 12 language, and two contain the Time Element Pollution Endorsement.

### B.    The Defendant's Contentions[8]

Regarding the plaintiff's motion for partial summary judgment, the defendant asserts that the plaintiff has a duty to defend under all five umbrella policies, as both an excess insurer and as an umbrella insurer. The defendant claims that even a full application of the arbitration award does not eliminate the plaintiff's duty to indemnify.

Regarding the defendant's motion for partial summary judgment, it claims that it was potentially entitled to a defense under the four primary policies and the 2001 umbrella policy, thus establishing that the plaintiff breached its duty to defend as to each underlying action. Regarding the plaintiff's motion to strike, it contends that extrinsic evidence is permissible under the facts of this case, and that the Court has discretion to admit the exhibit that the plaintiff asserts was untimely filed.

## IV.    Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber*, *Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

---

[8] The defendant's counterclaim asserts four counts: (1) request for declaratory relief; (2) breach of contract; (3) common law and statutory bad faith; and (4) statutory prompt pay violations.

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex*, *Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075).   "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'"   *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)).   The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted).   Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.,* 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'"   *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted).   When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)).   Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis

omitted)).   Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380).   Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"   *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V.    Analysis and Discussion

### A.    The Plaintiff's Partial Summary Judgment Motion

The Court grants the plaintiff's motion for partial summary judgment.   Since losing the arbitration, the defendant has attempted to evade the award, first by unsuccessfully seeking to have it declared void by a federal district court in Oklahoma, and then by unsuccessfully seeking to have a Texas state court vacate it. While the arbitration panel did not expressly make coverage determinations, its binding findings necessarily affect determinations of both the duties to defend and indemnify. The award has a preclusive effect, despite the defendant's asserted distinctions between the underlying Fugitive Emission Lawsuits that make no difference. The underlying suits are substantially similar for all present purposes.

All five umbrella policies contain language that specifically forecloses a duty to defend. Additionally, the plaintiff had no duty to defend under the 1997, 2000, or 2001 policies due to Texas' eight-corners rule, the defendant's belated windstorm claim notwithstanding.   Nor did the plaintiff owe a duty to defend under the 1995 or 1996 policies according to the Time Element Pollution Endorsement ("TEPE") exclusion requirements for those policies.

Also, the plaintiff does not owe a duty to indemnify under any of the five policies.   The preclusive effect of the arbitration award on the interpretation of the PCOH exception in the

1997, 2000, and 2001 policies collaterally estops the defendant from asserting an indemnity claim.  Moreover, the defendant has offered insufficient evidence that the underlying losses were caused from "products" not in its "physical possession," and insufficient evidence of any windstorm.  Regarding the 1995 and 1996 umbrella policies, the Court also grants the plaintiff's motion because the defendant has failed to meet the TEPE exclusion requirements for indemnity.

### 1.      The Effect of the Panel's Findings

The arbitration panel considered PCOH exception to the 2001 umbrella policy.  In so doing, the panel made findings, affirmed by a Texas state district court, that are determinative of whether the plaintiff owes the defendant a defense or indemnity under any of the five umbrella policies.  The Fugitive Emissions Lawsuit plaintiffs all allege loss because of pollution caused by carbon black dust or particulates emitted from the defendant's plants during its production process.  The claims in all of those suits were aimed at the on-site defective equipment and reckless premises operations that caused the discharges of fugitive emissions.  Also, all five umbrella policies contain a mandatory arbitration provision.

### 2.      Duty to Defend

The Court finds that the plaintiff has no duty to defend the defendant based on the pollution endorsements in all five umbrella policies, which expressly disclaim a duty to defend. The parties agree that Texas law applies, and Texas law generally endorses the eight-corners rule.  "The eight-corners rule provides that when an insured is sued by a third party, the liability insurer is to determine its duty to defend solely from the terms of the policy and the pleadings of the third-party claimant.  Resort to evidence outside the four corners of these two documents is generally prohibited."  *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 307 (Tex. 2006).  "If the [claimant's] petition only alleges facts excluded by the policy, the

insurer is not required to defend." *Fidelity & Guar. Ins. Underwriters, Inc. v. McManus*, 633 S.W.2d 787, 788 (Tex. 1982).  Further, "[t]he court may not read facts into the pleadings or imagine factual scenarios which might trigger coverage." *VRV Dev. L.P. v. Mid-Continent Cas. Co.*, 630 F.3d 451, 456-57 (5th Cir. 2011) (internal quotations omitted).  The Court finds that, based on the terms of the policies and the defendant's pleadings, the defendant's claims cannot survive summary judgment scrutiny.

As to the four corners of the policy, the same general rules that govern the interpretation of contracts govern the interpretation of insurance policies in Texas, and a policy must be interpreted to effectuate the intent of the parties at the time the policy was formed.  *See Performance Autoplex II Ltd. v. Mid-Continent Cas. Co.*, 322 F.3d 847, 853 (5th Cir. 2003); *Progressive County Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003).  Terms within an insurance contract are given "their plain, ordinary, and generally accepted meaning unless the contract itself shows that particular definitions are used to replace that meaning." *Bituminous Cas. Corp. v. Maxey*, 110 S.W.3d 203, 208-09 (Tex. App. – Houston [1st Dist.] 2003, pet. denied) (internal citation omitted).

If an insurance contract is worded such that it "can be given a definite or certain legal meaning," then it is unambiguous and enforceable as written.  *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus.*, 907 S.W.2d 517, 520 (Tex. 1995).  Only if an insurance contract is susceptible to multiple reasonable interpretations must a court adopt the interpretation most favorable to the insured.  *Nat'l Union Fire Ins. Co.*, 907 S.W.2d at 520.  Nevertheless, a court will not find a contract ambiguous merely because the parties offer contradictory interpretations. *See Cent. States, Se. & Sw. Areas Pension Fund v. Creative Dev. Co.*, 232 F.3d 406, 414 n.28 (5th Cir. 2000) (citing *Wards Co. v. Stamford Ridgeway Assocs.*, 761 F.2d 117, 120 (2d Cir.

1985) (internal quotation marks and citation omitted)) ("A Court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity, and words do not become ambiguous simply because lawyers or laymen contend for different meanings."); *see also Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 465 (Tex. 1998).  Accordingly, the Court determines that the contested policy terms are unambiguous on their face and should thus be given their plain meaning.  *See Bituminous Cas. Corp.*, 110 S.W.3d at 208-09.

"The insured bears the initial burden of showing that there is coverage, while the insurer bears the burden of proving the applicability of any exclusions in the policy" that permit the insurer to deny coverage.  *Guar. Nat'l Ins. Co. v. Vic Mfg. Co.*, 143 F.3d 192, 193 (5th Cir. 1998) (citing *Telepak v. United Servs. Auto. Ass'n*, 887 S.W.2d 506, 507 (Tex. Civ. App. – San Antonio 1994, writ denied); *see also Venture Encoding Serv., Inc. v. Atl. Mut. Ins. Co.*, 107 S.W.3d 729, 733 (Tex. App. – Fort Worth 2003, pet. denied) (stating that the Texas Insurance Code places the burden on the insurer to prove any exception to coverage).  Once the insurer has established that an exclusion applies, the burden shifts to the insured to prove that an exception to the exclusion applies.  *Guar. Nat'l Ins. Co.*, 143 F.3d at 193 (internal citation omitted).

Moreover, the Texas Supreme Court has repeatedly emphasized that there are no recognized exceptions to the eight-corners rule.  *D.R. Horton-Texas, Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 744 (Tex. 2009) ("analysis of the duty to defend has been strictly circumscribed by the eight-corners doctrine"); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 497 (Tex. 2008) ("while Maryland has recognized exceptions, in some limited circumstances, to the eight-corners rule, Texas has not").  It would be error for the Court to decide whether the plaintiff had a duty to defend based on what was unsaid in the underlying complaints.

Rather, the duty to defend is decided solely on what was said in the four corners of the underlying complaint and the four corners of the relevant policies.[9]  Accordingly, the Court disallows the defendant's references to extrinsic evidence.[10]  With these principles in mind, the Court turns to the relevant policy language.

Each of the five umbrella policies states:

> solely as respects any coverage granted by [the pollution exclusion] . . . We will not be obligated to assume charge of the investigation, settlement or defense of any claim made, suit brought or proceeding instituted against the Insured.

Accordingly, those five policies unambiguously provide that the plaintiff had no duty to defend against pollution claims in the Fugitive Emission Lawsuits.  That policy language, in-and-of-itself, is sufficient to establish that the plaintiff owes no duty to defend under the contested umbrella policies.  Nevertheless, additional reasons follow.

### a.    The Plaintiff Owes No Duty to Defend under the 1997, 2000, or 2001 Policies[11]

The plaintiff has no duty to defend the defendant under the 1997, 2000, or 2001 umbrella policies.[12]  The Court looks to the language of the 2001 policy because that is the policy the arbitration panel interpreted, but the 1997 and 2000 policies have substantially similar relevant language and contain the same PCOH and windstorm exceptions.  The 2001 umbrella policy covers property damage and bodily injury that falls within the PCOH definitions, including "all

---

[9] The Court disagrees with the defendant's assertion that "all doubts" must be construed in favor of the insured in determining whether a defense is owed.  The defendant quotes from *Collier v. Allstate Cnty. Mut. Ins. Co.*, 64 S.W.3d 54, 59 (Tex. App. – Fort Worth 2001, no pet.) for this proposition, but it selectively omits the next sentence where the court held that "it is not every doubt that requires resolution of the duty to defend in favor of the insured; the pleadings must create 'that degree of doubt which compels resolution of the issue for the insured.'"

[10] *See* Section **V(C)**, *infra*.

[11] All three policies contain substantially similar language to the 2001 policy's Endorsement 12.

[12] Moreover, the defendant is not entitled to summary judgment because there are genuine issues of material fact regarding whether the defendant timely complied with the notice provisions of the contested policies in each of the underlying lawsuits.

'bodily injury' or 'property damage' occurring away from your premises . . . and arising out of 'your product' *except . . . products* that are *still in your physical possession*" (italics added).

The 2001 policy defines "your product" as "any goods or products, other than real property, manufactured, sold, handled, distributed, or disposed of by You." The arbitration panel's decision that "[i]tems that are in the process of being manufactured" are "not products" has now been reduced to a judgment and is controlling. The panel decided what the PCOH exception does and does not cover, setting forth a series of conclusions about the proper meaning of the words "product" or "good":

> (1) we conclude that fugitive emissions are not "product;"
> (2) Items that are in the process of being manufactured and that are not yet ready for sale are thus not "products;"
> (3) It is our conclusion that the products hazard is not intended to apply to what are, in essence, premises-operations;
> (4) the "products" coverage provided under the National Union policy is intended to reflect product exposures involving the insured's sales, not incidental exposures to by-products of the manufacturing process while the insured's products were in the process of being manufactured;
> (5) We do not view any surviving, uncombusted particulate matter escaping through the smoke stack as the insured's product, since it was not intended to be sold by the insured and escaped from the manufacturing process, rather than emerging from it;
> (6) While "goods" is broadly defined, it still only includes only [*sic*] things that are the subject of transactions.  Tex. Bus. & Com. Code § 2.102. . . . The feed stock, vapor stream, and unfiltered particulate do not meet this standard.

The panel went on to hold that even if the losses arose out of the defendant's "product" or "good," the PCOH exception would still not apply because the damage arose out of "product" still in the defendant's "physical possession."[13]   The panel found that "the nature of the risk giving rise to these losses was an on-premises risk. The physical cause of losses was entirely

---

[13] The panel stated:
> "it is also our conclusion that, at each stage at which the carbon black constituted 'your product' it was also within Continental Carbon's physical possession and that all damage alleged and established in the *Action Marine* litigation arose while it was 'still' in Continental Carbon's 'physical possession.'  Therefore, it is our conclusion that the endorsement is not intended to provide coverage for any of these fact patterns."

within the control of Continental Carbon." Because the pleadings in each of the Fugitive Emissions Lawsuits state a claim for damages caused by pollutant emissions that were precursors to the defendant's finished product, the PCOH exception, as interpreted in the affirmed and binding arbitration award show that the plaintiff had no duty to defend the defendant.

Instrumental to the panel's reasoning were its explanations that: (1) "arising out of" has broad reach; (2) the particulates emitted during the manufacturing/handling processes all arose out of carbon black "product" still in the defendant's "physical possession;" and (3) the damages occurring away from the defendant's premises arose from "product" on the defendant's premises.[14]   Moreover, "it is equally undisputed that [pollutants emitted from the defendant's plant] were within the possession or control of Continental Carbon at the point that they were released . . . As such, this damage clearly arose out of products that were still in the physical possession of Continental Carbon."

Furthermore, even if the Court were to conclude that any portion of the panel's determinations was not binding, the plaintiff is nonetheless entitled to summary judgment because the defendant has not proffered a single allegation in any of the underlying pleadings to suggest that fugitive emissions were potentially discharged from product located at any place other than at the defendant's plants.   For this independent reason, the plaintiff is entitled to summary judgment.   *See Celotex Corp.*, 477 U.S. at 322-23; *Century Sur. Co. v. Hardscape*

---

[14] The panel reasoned:

> There does not appear to be any dispute that all of the releases or emissions giving rise to the *Action Marine* litigation occurred on the insured's premises . . . It is our conclusion, therefore, that, to the extent carbon black at [the defendant's] plant is deemed to be a "product," the resulting property damage arose out of products that were still within the physical possession of [the defendant].

When unsuccessfully arguing before the state trial court for a vacatur of the arbitration award, the defendant asserted that the issue of when possession and ownership of Continental Carbon's product was transferred was beyond the scope of the arbitration.   The state trial court judgment rejecting the defendant's argument is *res judicata*. *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 865-66 (Tex. 2010).

*Constr. Specialties, Inc.*, 578 F.3d 262, 265 (5th Cir. 2009) (internal citation omitted) (insured must prove applicability of exception); *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's of London*, 327 S.W.3d 118, 134-35 (Tex. 2010) (no coverage owed where insured had no evidence that facts underlying its settlement fell within exception to coverage).

Next, although the 1997, 2000, and 2001 umbrella policies exclude pollution coverage, coverage is restored if the loss is directly or indirectly caused by a "windstorm."[15] "Windstorm," while not defined in the policy, is defined by Texas law. *Mid-Continent Cas. Co. v. Whatley*, 742 S.W.2d 475 (Tex. App. – Dallas 1987, no writ) ("'windstorm' is a wind of 'unusual violence' . . . that must assume the 'aspects of a storm' . . . it is more than an ordinary gust of wind, however prolonged") (quoting *Fireman's Ins. Co. of Newark, N.J. v. Weatherman*, 193 S.W.2d 247, 248 (Tex. Civ. App. – Eastland 1946, writ ref'd n.r.e.)).

Because windstorm is an exception to the pollution exclusion, the defendant must proffer probative evidence that the losses at issue were directly or indirectly cause by a windstorm. *Celotex Corp.*, 477 U.S. at 322-23; *Century Sur. Co.*, 578 F.3d at 265. The defendant has not done so, as nothing in any of the underlying complaints indicates that the any of the Fugitive Emission Lawsuit plaintiffs claimed damages that resulted from "wind," a "storm," or a "windstorm," nor has the defendant offered any other sufficient evidence of a windstorm. *See Gilbert Tex. Constr., L.P.*, 327 S.W.3d at 134-35.[16] Accordingly, the Court grants the plaintiff's motion regarding the windstorm exception as well.[17]

---

[15] Not until losing the 2010 arbitration that it initiated to interpret the PCOH exception did the defendant claim for the first time that it was also owed a defense under the windstorm exception.

[16] *See also Carter v. Westport Ins. Corp.*, No. B-09-99, 2010 U.S. Dist. LEXIS 40247, *8-9 (S.D. Tex. Apr. 23, 2010) ("This Court agrees that the First Amended Petition does not rule out the possibility that Carter was instructed to work [as an employee for the insured], but that is not the test. Indeed, this is just the kind of imaginary fact scenario that the eight corners rule specifically prohibits."). "[C]ourts must not 'read facts into the pleadings,' 'look outside the pleadings, or imagine factual scenarios which might trigger coverage.'" *Std. Waste Sys. Ltd. v. Mid-Continent Cas. Co.*, 612 F.3d 394, 399 (5th Cir. 2010) (*per curiam*); *see also Brooks, Tarlton, Gilbert, Douglas &*

### b. The Plaintiff Owes No Duty to Defend under the 1995 or 1996 Policies

Nor did the plaintiff owe a duty to defend under the 1995 or 1996 policies containing the

TEPE exclusion of pollution coverage unless five requirements were met:

> 1. It was accidental and neither expected nor intended by the **Named Insured**. This condition would not serve to deny coverage for a specific incident where such discharge, dispersal, seepage, migration, release or escape of pollutants was a result of an attempt by the **Insured** to mitigate or avoid a situation where substantial third party **Bodily Injury, Property Damage** or **Personal Injury** could occur; and
> 2. It was demonstrable as having commenced on a specific date during the term of this policy; and
> 3. Its commencement became known to the **Named Insured** within seven (7) calendar days and was further reported to the Risk Management Department within a reasonable time frame; and
> 4. Its commencement was reported in writing to us within twenty-one (21) calendar days of becoming known to the Risk Management Department; and
> 5. Reasonable effort was expended by the **Named Insured** to terminate the situation as soon as conditions permitted.

It is undisputed that the defendant failed to timely meet these five requirements, and therefore

there can be no duty to defend under the 1995 or 1996 policies.  Indeed, the defendant admitted

that it did not provide a written report to the plaintiff within twenty-one calendar days after its

Risk Management Department became aware of the pollutants alleged in the Fugitive Emission

Lawsuits, as required under subparagraph four of the TEPE exclusion. Therefore, the Court

grants the plaintiff's motion on this issue.

---

*Kressler v. U.S. Fire Ins.*, 832 F.2d 1358, 1368 (5th Cir. 1987) ("the proper question is not what could [the plaintiff] successfully have pled, but what did [the plaintiff] in fact plead?"); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) ("The duty to defend . . . does not extend to allegations, true or false, that have not been made.").

[17] The Court is not convinced by the defendant's argument that duties were owed because the fine particles or dust must have traveled by wind from the defendant's premises to neighboring properties.  Such an interpretation, if accepted, would render the umbrella policies' pollution exclusions largely superfluous.  Otherwise, air pollution, which usually requires some degree of wind – but not necessarily a "windstorm" – would not be an excluded loss, but would always be covered under the windstorm exception.  That interpretation is simply unreasonable.

### 3.     Duty to Indemnify

Having found that the plaintiff owes the defendant no defense, the Court also determines that the plaintiff owes the defendant no indemnity under the umbrella policies. When an insurer has no duty to defend, it also has no duty to indemnify because "the same reasons that negate the duty to defend likewise negate any possibility the insurer will ever have a duty to indemnify." *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997).

### a.     The Plaintiff Owes No Duty to Indemnify under the 1997, 2000, and 2001 Umbrella Policies

The arbitration award establishes that the plaintiff owes no duty to indemnify under the PCOH exception to the 1997, 2000, and 2001 umbrella policies.  Whether the plaintiff owes a duty to indemnify the defendant turns on the terms of the policy and the facts of the underlying litigation.  *See D.R. Horton-Tex., Ltd. v. Market Int'l Ins. Co*, 300 S.W.3d 740, 743-44 (Tex. 2009).  The Court holds that the binding arbitration award is preclusive, and it serves to deny indemnity of the defendant's claims concerning the umbrella policies. The defendant may not now relitigate the proper interpretation of the PCOH exception because the arbitration award collaterally estops the defendant from seeking a defense or indemnity under the PCOH exception.

The doctrine of collateral estoppel, or issue preclusion, bars relitigation where "(1) the facts sought to be litigated in the second action were fully and fairly litigated in the first action; (2) those facts were essential to the judgment in the first action; and (3) the parties were cast as adversaries in the first action."  *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 801 (Tex. 1994) (internal citations omitted). Collateral estoppel is an affirmative defense, and the party asserting it has the burden of proof.  *Sysco Food Servs., Inc.*, 890 S.W.2d at 802.  Trial courts have broad discretion in determining whether to apply the doctrine of collateral estoppel.

*Upjohn v. Freeman*, 906 S.W.2d 92, 101 (Tex. App. 1995) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 328 (1979)); accord *J.M. Muniz, Inc.* v. *Mercantile Texas Credit Corp.*, 833 F.2d 541, 543 (5th Cir. 1987).

Here, all three collateral estoppel requirements were met. First, the essential facts now sought to be litigated were fully and fairly litigated in the arbitration. Second, the issue of the correct interpretation of the PCOH exception was essential to the arbitration award. *See Tremont LLC v. Halliburton Energy Servs., Inc.*, 696 F. Supp. 2d 741, 838 (S.D. Tex. 2011) (rejecting defendant's argument that findings in arbitration award were merely dicta); *Autotrol v. J-F Equip Co*, 820 F. Supp. 293, 297 (N.D. Tex. 1993). The arbitration panel determined that the PCOH exception did not apply to the losses at issue. Therefore, necessarily, no indemnity is owed under the PCOH exception. Finally, the parties were cast as adversaries in the arbitration. Accordingly, the defendant is barred from relitigating issues that have already been adjudicated.

Courts routinely give arbitration awards preclusive effect. *See, e.g., Autotrol*, 820 F. Supp. at 297 ("Numerous courts have recognized that arbitration awards can have preclusive effect in subsequent litigation.); 9 U.S.C. § 13 (judgment confirming arbitration award has same effect as court judgment). A Texas state court judgment has preclusive effect even while on appeal. *De Gonzalez v. Guilbot*, 315 S.W.3d 533, 536 n.3 (Tex. 2010) (internal citation omitted).

While the panel did not expressly rule on the issue of indemnity, the arbitration award collaterally estops the defendant from seeking indemnity under the PCOH exception. The panel's determination that the PCOH exception did not apply to the losses at issue necessarily controls the issue of whether indemnity is owed under that exception. That is because if there is no coverage under a policy for a loss, then no indemnity is owed. *Delta Seaboard Well Servs. v. Am. Int'l Specialty Lines Ins. Co.*, No. H-09-84, 2009 U.S. Dist. LEXIS 27746, at *5-6 (S.D.

Tex. April 2, 2009) (insured precluded from litigating indemnity claim when coverage had been decided against it in earlier case), aff'd 602 F.3d 340 (5th Cir. 2010).[18]

The Court is unconvinced by the defendant's arguments to the contrary.  The panel did not exceed its authority, as tacitly acknowledged by the state trial court that confirmed the panel's award.[19]  That state court determination is *res judicata*.  *See Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010) (*res judicata* applies where there is: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were or could have been raised in the first action").

During the arbitration, the panel considered evidence regarding the Fugitive Emission Lawsuits, and the defendant itself has argued repeatedly that those lawsuits are "copycats" of the Action Marine case. Furthermore, the relevant PCOH exception language is identical in the 1997, 2000, and 2001 umbrella policies, so there is no adequate basis to propose that an interpretation of the 2001 umbrella policy does not apply to the 1997 and 2000 umbrella policies. *See Tremont*, 696 F. Supp. 2d at 835-36.  Thus, the plaintiff does not owe the defendant a duty to indemnify under the 1997, 2000, or 2001 policies.

Moreover, as noted above, the panel's interpretation of "product," "good," and "physical possession," as those words are used in the PCOH exception, forecloses the defendant's indemnity claim under the PCOH exception in the 1997, 2000, and 2001 umbrella policies.[20]

---

[18] Moreover, the defendant repeatedly invited the arbitrators to address coverage under the PCOH exception. Indeed, the defendant's opening and reply briefs in the arbitration are replete with instances of urging the panel to make a coverage determinations as to the PCOH exception to the 2001 umbrella policy.

[19] Furthermore, submissions made to the arbitration panel during the course of its proceedings can broaden its authority.  *See Executone Info. Sys., Inc. v. Davis*, 26 F.3d 1314, 1323 (5th Cir. 1994); *Ancor Holdings, LLC v. Peterson, Goldman & Villani, Inc.*, 294 S.W.3d 818, 830 (Tex. App. – Dallas 2009, no pet.).

[20] *See* Section **V(A)(2)(a)**, *supra*.

Also, the defendant has presented insufficient evidence of any windstorm, and so it is not entitled to indemnity under the windstorm exception of the 1997, 2000, or 2001 umbrella policies.[21]

### b.      The Plaintiff Owes No Duty to Indemnify under the 1995 and 1996 Umbrella Policies

The plaintiff does not owe the defendant a duty to indemnify under the 1995 and 1996 umbrella policies because it failed to comply with the TEPE exclusions in either of those policies.[22]   Thus, the Court grants the plaintiff's motion on the indemnity issue for all five umbrella policies.

### B.      The Defendant's Partial Summary Judgment Motion[23]

The Court denies the defendant's partial summary judgment motion.  Because the Court addressed the umbrella policies above,[24] it will only address the primary policies here. The pollution exclusions in the primary policies define "pollutant" as an "irritant" and "contaminant," but neither "irritant" nor "contaminant" are defined in those policies. The defendant cites to the underlying *Ponca Tribe* and *Ponca City* actions' allegations that "other fine particulate matter," "nuisance dust" and "related materials" damaged those underlying plaintiffs. The defendant then asserts that those three terms might not be "irritants" or "contaminants."  Read in the context of the underlying "copycat" allegations, the Court is not persuaded by the defendant's semantic arguments. In those underlying allegations, the primary policies' pollution exclusions are sufficiently capacious to encompass "other fine particulate matter," "nuisance dust" and "related

---

[21] *See id.*

[22] *See* Section **V(A)(2)(b)**, *supra*.

[23] Without explanation, the defendant is presently moving for summary judgment on only five of the six underlying suits, concerning four primary policies and one umbrella policy.

[24] *See* Section **V(A)**, *supra*.

materials," and the Court determines that the defendant is asserting distinctions that make no difference. *See Cent. States, Se. & Sw. Areas Pension Fund*, 232 F.3d at 414 n.28 (citing *Wards Co.*, 761 F.2d at 120).

The Court also denies the defendant's motion regarding the 1998-99 primary policy in particular. That policy also includes a windstorm exception[25] to its pollution exclusion. As the Court determined above,[26] the defendant is unable to show that any windstorm exception to any of the pollution exclusions merits a defense or indemnity from the plaintiff. Thus, the Court denies the defendant's motion on this issue as well.[27]

### C.    The Plaintiff's Motion to Strike

The Court grants the plaintiff's motions to strike. First, the inclusion of the extrinsic evidence offered by the defendant violates the eight-corners rule.[28]   Second, even if included, the contested evidence fails to raise the defendant's speculation of a potential windstorm that transported pollutants that were no longer in its "physical possession" beyond that – speculation. *See VRV Dev. L.P.*, 630 F.3d at 456-57.

Moreover, the defendant's wind data declaration was filed five weeks after its motion, and without leave of the Court. Accordingly, the Court strikes it under various authorities that require supporting materials to be filed with the party's motion.  *See* Fed. R. Civ. P. 6(c)(2) ("Any affidavit supporting a motion must be served with the motion."); S.D. Tex. L.R. 7.7 ("If a

---

[25] That exception states, in relevant part, that the pollution exclusion would not apply to "'bodily injury'" or 'property damage' arising out of the actual discharge, dispersal, seepage, migration, release or escape of pollutants caused by . . . windstorm."

[26] *See* Section **V(A)(2)(a)**, *supra*.

[27] Additionally, genuine issues of material fact remain disputed concerning whether the defendant timely complied with the requisite notice provisions of the policies.

[28] *See* Section **V(A)(2)**, *supra*.

motion or response requires consideration of facts not appearing of record, proof by affidavit or other documentary evidence must be filed with the motion or response").[29]   The defendant's belated filing deprived the plaintiff of a meaningful opportunity to respond to the information contained in the wind data declaration.   The wind data declaration is not only extrinsic evidence that is impermissible under Texas' eight-corners rule, it is also untimely.   Accordingly, the Court grants the plaintiff's motions to strike.

**VI.    Conclusion**

Based on the foregoing discussion, the Court GRANTS the plaintiff's motions and DENIES the defendant's motion.

It is so **ORDERED**.

SIGNED at Houston, Texas this 9th day of January, 2012.

Kenneth M. Hoyt
United States District Judge

---

[29] *See also Roehrs v. Conesys, Inc.*, 332 Fed. Appx. 184, 189-90 (5th Cir. 2009) (affirming district court's decision to strike untimely supplemental evidence offered in response to motion to summary judgment without obtaining leave of court).   "[D]ispositive evidence [introduced] by way of new affidavits and exhibits deprives the nonmovant of a meaningful opportunity to respond."   *Spring Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991).